RANDALL H. GREEN *vs.* TIMOTHY I. TANNER & others.

The fact that a firm was in debt when the partners made a conveyance of their prop
erty is not sufficient to raise a presumption that the conveyance was fraudulent
In order to avoid such conveyance, proof must be given that it was made with
the intention to defraud the creditors of the firm, or subsequent purchasers, and
that the grantee had knowledge of such intention.

A *bonâ fide* purchaser from the fraudulent grantee of a debtor acquires a good title
against the creditors of the original grantor.

When money is lent to part of the members of a firm, who give a note for it in
their own names only, the lender is not a creditor of the firm, although the bor
rowers apply the money towards payment of the debts of the firm.

Though a bill in equity, brought to redeem a mortgage, ought in strictness to contair
an offer of the plaintiff to pay such sum as shall be found due from him, yet if
no objection is made to the bill, for want of such offer, he may have leave to
amend it, after a hearing of the case.

A mortgagee, who brings a bill in equity to redeem a prior mortgage, is entitled to
redeem, on paying the sum due thereon, although the defendant has, in addition
to his prior mortgage, a claim on the mortgaged property, subsequent to that
of the plaintiff's mortgage; unless the defendant files a cross bill to redeem the
plaintiff's mortgage.

THIS was a bill in equity, wherein the plaintiff alleged that, on the 7th of November 1834, Nathaniel C. Dana and William R. Butterworth, being owners of certain real and personal estate in Seekonk, known as " the Cove Mill Estate," con veyed the same to Christopher Rhodes, William Rhodes, Orray Taft, Thomas Truesdell and Robert Rhodes, in mortgage, for the consideration of $25,000, to secure payment of fourteen promissory notes, of the same date, made by said mortgagors to said mortgagees; and on the 9th of December 1835, conveyed the said estate, with all the additions thereto and improvements thereof, to Samuel Congdon, his heirs and assigns, for the consideration of $3000, subject to the aforesaid mortgage: That said Congdon, on the 10th of February 1837, made quitclaim deeds of five eighths of all his right, title and interest in said property, as follows; viz. a deed of one undivided fourth thereof, for the alleged consideration of $5000, to John Jenckes, his heirs and assigns forever, taking back a mort gage thereof from said Jenckes, to secure payment of a note made by him to said Congdon, for $5000 payable in one year; also a deed of one undivided fourth thereof, for the same alleged con

sideration, to William H. Drown, his heirs and assigns forever taking back a mortgage thereof from said Drown, to secure pay ment of a like note made by him to said Congdon, for $5000, payable in one year, with interest; and also a deed of one undivided eighth thereof, for the alleged consideration of $2668·37, to Jonathan Knowles, his heirs and assigns forever, taking back a mortgage thereof from said Knowles, to secure payment of a note made by him to said Congdon, for $2668·37, payable in one year with interest: That the said Congdon, Jenckes, Drown and Knowles, on or about the said 10th of February 1837, entered into partnership, for the purpose of manufacturing cotton cloth at said Cove Mill, under the name and style of the Cove Mill Company; and their principal capital consisted of the aforesaid real and personal property, and was held by them in the following proportions, viz. three eighths by said Congdon, two eighths by said Jenckes, two eighths by said Drown, and one eighth by said Knowles: That on the 19th of April 1837, said Jenckes, Drown and Knowles, for the false and pretended consideration of $13,000, quitclaimed, by deed, all their right, title and interest in said property to the said Congdon, his heirs and assigns, with the intent and design to hinder, delay and defraud their creditors; that the three several notes above mentioned constituted the sole consideration of said quitclaim deed, and that said notes were in equity paid, and ought to have been surrendered to the makers thereof by said Congdon, when he received said deed: That said Samuel Congdon, on the same 19th of April, in furtherance of said fraudulent intent and design, with intent to hinder, delay and defraud the creditors of the aforesaid partnership of their just and lawful actions, debts and demands, conveyed all said Cove Mill Estate, by two deeds of mortgage; viz. a deed to Charles Congdon, for the purpose of securing to him the sum of $3750, feigned and pretended to be due to him from said Samuel on a note for that sum and interest, dated November 7th 1834; and also a deed to William H. Waterman, his heirs and assigns, for the purpose of securing to him the sum of $3750, feigned and pretended to be due to him from said Samuel on a note for that sum and

interest, dated on the 7th of November 1834 : That said Samuel Congdon, on the 20th of April 1837, by quitclaim deeds, reconveyed to said Jenckes and Drown each one undivided fourth, and to said Knowles one undivided eighth, of said property, for the alleged consideration of $5000, paid by said Jenckes, and the same sum paid by said Drown, and $2668·37, paid by said Knowles: That said Jenckes, on the 21st of April 1837, quitclaimed all his interest in said property to Welcome Congdon, his heirs and assigns, for the alleged consideration of $500 : That said Charles Congdon, on the 16th of October 1838, conveyed all his interest in said property to Anthony B. Arnold, on a trust expressed in these words : " That the said Arnold shall, at any time after either of the following named notes, to be given hereafter, shall have become due and payable, and the same shall be unpaid for the term of sixty days thereafter, upon the request, in writing, of the President, Directors and Company of the City Bank," (of Providence,) " sell, at public auction, the premises aforesaid, he or they first giving, after the expiration of said term of sixty days, sixty days' notice thereof in some one of the public newspapers printed in the city of Prov idence, make and execute the necessary conveyance thereof, receive the amount of such sale or sales, and, after the payment of all the expenses of sale, apply and appropriate the residue in manner follow'ng, to wit ; *first,* to pay a negotiable promissory note for the sum of $1740, to be made by Samuel Congdon, payable to, and to be indorsed by, John Jenckes, in three months from the first day of November 1838, at bank ; *secondly,* to pay a note to be made by John Jenckes, payable to, and to be indorsed by, Samuel Congdon, for $1740, in four months from said first day of November, at bank ; *thirdly,* to pay a note to be made by Samuel Congdon, payable to, and to be indorsed by, Welcome Congdon, for the sum of $3000, in six months from said first day of November, at bank ; and *fourthly,* to pay all such notes or drafts as may at any time hereafter be given in part payment or renewal of either of the aforesaid notes : And in further trust, in case of a sale of said premises under and by virtue of this conveyance, to pay over to the said Charles all such sums of money as may remain after the pay·

ment of the expenses, the said notes, and reasonable compensation for the services of the trustee ; and, in case said notes shall be paid or cancelled by the makers or the indorsers, or any other person for them or either of them, without recourse to the sale of the land, then to reconvey said premises to me the said Charles : " That the said William H. Waterman, on the 16th of October 1838, and the said Samuel Congdon, on the 15th of December 1838, each conveyed all his interest in said property to said Anthony B. Arnold, in trust for the same purposes mentioned in the aforesaid conveyance of Charles Congdon to said Arnold, except that, in case of a sale of the said property, said Arnold was to pay over to said Waterman all sums that might remain after the payments in said conveyance mentioned, and, in case no sale should take place, to convey said property to said Waterman, he accounting to said Samuel Congdon for said balance or for said premises : That the three conveyances last aforesaid were made with the intent and design of securing the respective private creditors of the said John Jenckes and Samuel Congdon by the partnership property of the Cove Mill Company, when that company was insolvent, and with the intent to hinder, delay and defraud the creditors of said company, and give to the creditors of the individual members of the company a priority over the partnership creditors ; all which was well known by said Arnold : That said Jonathan Knowles, on the 16th of April 1839, quitclaimed all his interest in said property to said John Jenckes ; and said Welcome Congdon, on the same day, reconveyed to said Jenckes all his interest in said property ; one of these deeds of quitclaim *bearing date* April 4th, and the other April 3d : That on the 10th of April 1839, said partnership were largely indebted to divers persons, and applied to the plaintiff for a loan of money to pay their partnership debts ; and that he lent them $10,000, and received their promissory note therefor, payable in one year with interest ; and that said money so lent was applied to the payment of partnership debts and to other partnership purposes ; and the plaintiff, on the same day, received of said John Jenckes, Samuel Congdon and William H. Drown, two mortgage deeds to secure pay

ment of said money, viz. one conveying the real property, and another conveying the personal property described in the mortgage, first above mentioned, made by Dana and Butterworth to Christopher Rhodes and others; but that no part of said money has been repaid to the plaintiff: That said Samuel Congdon and John Jenckes, on the 4th of October 1839, quitclaimed their interest in said property to Jonathan Knowles, who, on the 9th of December 1840, quitclaimed his interest in the same to Timothy I. Tanner: That on the 2d of January 1841, the said Anthony B. Arnold quitclaimed all his interest in said property to Timothy I. Tanner, for the alleged consideration of $7000; and that on the 28th of said January; Charles Congdon quit claimed to William H. Waterman all his interest under his aforesaid trust deed to Anthony B. Arnold; and on the 30th of said January, the said Waterman quitclaimed the same interest, and all his other interest under said trust deed, to said Timothy I. Tanner, his heirs and assigns; whereby said Tanner became, and still is, seized of the equity of redeeming three undivided fourth parts of said property : That on the 27th of April 1837, Thomas Truesdell and Robert Rhodes assigned all their interest in the mortgage aforesaid, made by Dana and Butterworth, unto said Christopher Rhodes, William Rhodes and Orray Taft; and that on the 5th of December 1839, said William Rhodes and Orray Taft took possession, according to law, of the whole of said property mentioned in that mortgage: That on the 18th of February 1841, Timothy I. Tanner conveyed all his interest in the same property to Lemuel C. Richmond, in mortgage, to secure payment of five promissory notes for the sum of $7000.

The bill then averred, that said Tanner, Richmond, Drown, Taft, Christopher Rhodes and William Rhodes, combining and confederating to injure the plaintiff, pretend that the aforesaid mortgage made by Dana and Butterworth, and the fourteen notes therein mentioned, have not been paid, and that a part of said notes are now outstanding; whereas the plaintiff charges that they have been more than paid, by money &c. and from the rents of the mortgaged property, or might have been, but for wilful default and bad management: That the aforesaid

conveyance from said Jenckes, Drown and Knowles, to Samue. Congdon, dated April 19th 1837, and the conveyances from Samuel Congdon to Charles Congdon and to said Drown, dated April 20th 1837; the two deeds made by Charles Congdon and said Waterman to Anthony B. Arnold, dated October 16th 1838; said Charles's conveyance to said Waterman, dated January 28th 1841; and said Waterman's conveyance to said Tanner, dated January 30th 1841 — were all made without any good or valuable consideration; that said conveyances, made on the 19th and 20th of April 1837, were made " of purpose and with intent and design to hinder, delay and defraud the then and future creditors of the Cove Mill Company; and that all said conveyances were fraudulent and void as to the plaintiff: That the deed from said Arnold to said Tanner, dated January 2d 1841, was made in violation of the trust and provisions of the conveyance to said Arnold, and was fraudulent and void as to the plaintiff: That at the time of the several conveyances of Charles Congdon, William H. Waterman and Samuel Congdon, to said Arnold, he well knew that said Cove Mill Company and said Samuel Congdon were, and long before had been, insolvent and largely indebted, and that the two aforesaid mortgages, from said Samuel to said Charles Congdon and to said Waterman, were given without consideration, and were fraudulent and void as against the partnership creditors.

The prayer of the bill was, that the defendants might answer, on oath, to all the matters therein charged; that an account should be taken, by a master, of what, if any thing, is due to said Christopher Rhodes, William Rhodes and Orray Taft, on the mortgage made by Dana and Butterworth, and what is due to the plaintiff on his mortgage; and that the said Tanner, Drown and Richardson be decreed to pay the plaintiff what shall be found due to him.

A supplemertal bill was filed, in which the plaintiff alleged, that after the filing of the original bill, and before service of notice thereof, viz. on the 10th of June 1841, the said Tanner, by his deed, for the alleged consideration of $8000, quitclaimed all his interest in one third of the Cove Mill *real* estate to Isaac

G. Richmond, and one other third part thereof, for the same alleged consideration, to Samuel D. Slocum ; that said Tanner, on the 3d of September 1841, by his deed, in which no consideration is expressed, quitclaimed to said Richmond and Slocum the other third part of said estate ; and that said Tanner, on said 10th of June 1841, for the alleged consideration of $1000, mortgaged unto Samuel Slocum one third part of said Cove Mill estate, to secure payment of two promissory notes, one for $450 in six months, and another for $500 in twelve months : Whereby said Isaac G. Richmond, Samuel D. Slocum and Samuel Slocum pretend to have become part owners of the share of said estate which said Tanner purchased, as in the original bill is set forth ; and they, confederating together, and combining with said Tanner, Drown, Taft, Christopher Rhodes and William Rhodes, to injure the plaintiff, pretend that said four deeds last mentioned were for a valuable consideration and *bonâ fide*, &c. and that they had no knowledge of the plaintiff's prior mortgage, or of his intention to file his original bill Whereas the plaintiff charges that said deeds were without any good or valuable consideration, and were not intended to convey any interest in said estate ; and that said deeds were made with a knowledge of the plaintiff's intention to file his said bill, and with intent to hinder, delay and defraud the plaintiff, and are, therefore, as against him, fraudulent and void : That the plaintiff is entitled to the same relief against said Slocums and Richmond, as against the defendants named in the original bill.

The prayer of this supplemental bill was, that said Slocums and Richmond make answer, on oath, to the matters charged against them.

The defendants made answers, to which the plaintiff filed a replication, and much evidence was taken by both parties. These answers, and the evidence, so far as they are necessary to an understanding of the points of law decided in the case, are sufficiently stated in the opinion of the court.

*L. C. Eaton*, of Rhode Island, for the plaintiff.

*Coffin*, for the defendants.

The opinion of the court was delivered at October term 1845

WILDE, J.   The facts in this case are very complicated, but the principles of law upon which the decision of the court is founded, render many of the facts immaterial.   The plaintiff, in his bill, prays for a decree of redemption of a certain estate mortgaged to Christopher Rhodes and others, averring that the mortgage debt has been fully paid, and that various other mortgages of the same estate, under which the defendants claim, made before the mortgage to the plaintiff, were fraudulent and void.   The bill further avers, and the defendants' answers admit, that Samuel Congdon, being the owner of the premises, subject to the said mortgage to Christopher Rhodes and others, on the 10th of February 1837, quitclaimed all his right and title to one fourth part of said premises to John Jenckes, another fourth part to William H. Drown, and one eighth part to Jonathan Knowles.   And the bill then avers, that on or about that time the said Congdon, Jenckes, Drown and Knowles, entered into partnership for the purpose of manufacturing cotton cloth, under the name of the Cove Mill Company; and that their principal capital was the property which they thus held in common, consisting of real and personal estate.   It is also averred by the plaintiff, and admitted by the defendants, that afterwards, on the 19th of April 1837, the said Jenckes, Drown and Knowles quitclaimed all their right and title in said premises to the said Congdon, who thereupon conveyed the same in mortgage to Charles Congdon, and, by another mortgage deed, to William H. Waterman.

The bill charges, and the plaintiff's counsel contends, that these last mentioned conveyances to Samuel Congdon, and from him to Charles Congdon and William H. Waterman, were made with the intent to delay and defraud the creditors of the partnership of their just debts and demands, and so, as to them, were wholly void.   This is denied by the defendants, and they insist that all these conveyances were made in good faith, and on good considerations, and without any fraudulent purpose whatever.   This then is a question of fact to be decided upon the evidence ; and we are of opinion that there is no sufficient evidence to maintain the charge of fraud.   The testimony of

Samuel Congdon, if believed, (and we are not aware of any good reason why it should not be believed,) is conclusive against any such charge, even admitting that the estate conveyed was the property of the partners. He testifies that these mortgages to Waterman and Charles Congdon were made in good faith, and to secure debts due to them, and liabilities incurred by them for him; and that this was known and agreed to by Jenckes, Drown and Knowles. It is true that his testimony is not fully confirmed by Jenckes and Drown. Jenckes testifies that he does not distinctly recollect for what purpose he quitclaimed his interest in the premises to Samuel Congdon, on the 19th of April 1837. And Drown testifies that he did not understand that any new incumbrances were to be added to the estate, between the time of his quitclaim to Samuel Congdon and his reconveyance back of the same estate. But he admits that it was represented to him that Charles Congdon was interested in one of the mortgages on the estate, and that his name ought to have been inserted in the deed from Samuel Congdon to him We consider this negative testimony as of very little weight against the affirmative testimony of Samuel Congdon, as it may reasonably be ascribed to their defect of recollection; especially as the same estate was reconveyed to them the next day after the mortgages were given, subject expressly to those mortgages. This and other circumstances confirm the testimony of Samuel Congdon, if any confirmation be necessary. But furthermore, there is no evidence to prove that these conveyances were made to defraud creditors. There is no proof that the firm was insolvent at that time, or that there was any apprehension of its becoming so. It is not sufficient to prove that the partners were in debt, in order to raise a presumption of fraud. The plaintiff, to avoid these mortgages, must prove that they were made with the intention to defraud the creditors of the firm, or subsequent purchasers; and that the mortgagees had knowledge of such intention. Of this knowledge there is no evidence; and Waterman and Charles Congdon testify that they had no knowledge of the affairs of the concern. The evidence, therefore, wholly fails to prove that these mortgages were made fraudulently, as alleged in the bill.

This being the opinion of the court, it becomes unnecessary to consider the question, whether the estate conveyed by these mortgages was or was not partnership property; a question much discussed by counsel, and which might be material, perhaps, in reference to the conveyance from Samuel Congdon to Anthony B. Arnold, but for the reasons which will be hereafter stated, in reference to another ground of defence, as to which this question is not material. But without reference to this ground of defence, and without deciding the question, whether, in a court of equity, the real estate in question is to be considered as held in trust for the partnership, and so substantially partnership property, we are strongly inclined to the opinion, that the plaintiff has failed to prove that the conveyance to Arnold is void or voidable on the ground of fraud. In the first place, there is no proof that Arnold, or the City Bank, for whose use and security the conveyance was made, had any notice or knowledge that the property belonged to the partnership; and this conveyance cannot be impeached by proof of a fraudulent intent on the part of the grantor, unless it is known to the grantee. In the second place, we think the evidence is not sufficient to prove that the plaintiff is a creditor of the partnership. The loan was made to three only of the partners, and their note was given therefor, in their own names, and not in behalf of the partnership. Knowles, the other partner, could not be joined in an action for the recovery of the note or loan. Nor does it appear, from the evidence, to have been a partnership debt. Samuel Congdon testifies that the money loaned was applied to the payment of a debt due by the Cove Mill Company to Jenckes and Congdon; whether in the whole or in part only, does not appear; but whatever was paid for partnership debts would be a good charge against the partnership, in the accounts between the partners. But this would nor affect the contract between the plaintiff and the three partners. They alone were liable on that contract. *Bailey* v. *Clark*, 6 Pick. 372.

Then it is contended, on behalf of the plaintiff, that this conveyance to Arnold is void by the *Sts.* of 13 and 27 Elizabeth. † was made, it is said, by an insolvent debtor, to secure or pay

a particular debt exclusively, the trustee and creditor knowing of the debtor's insolvency, and contains a provision requiring the trustee to pay over any surplus, or to convey the assigned property, upon the discharge of the debt secured, to a third person, to hold for the grantor.   But the knowledge by the City Bank, or by Arnold, of the insolvency of Samuel Congdon, does not necessarily affect the validity of the conveyance.   The conveyance was made on a valuable consideration, to secure a *bonâ fide* debt ; and an insolvent debtor has a right to pay or secure some of his creditors to the exclusion of others, unless made in fraud of some bankrupt or insolvent law.   In regard to the clause in the deed, authorizing Arnold to pay over the surplus of the proceeds of the sale of the estate, or, if not sold, to con vey the same to Waterman, we think it is no evidence of fraud, unless it was inserted with the fraudulent intention of locking up the funds or property, so that it could not be reached by the said Congdon's creditors, and this intention was known to Ar nold or the City Bank ; and of this there is no sufficient evidence.   Samuel Congdon testifies that the conveyance was made to secure a just debt, and there seems to be no sufficient evidence to prove that it was made for any other purpose. Arnold's deposition, taken by the plaintiff, is in the case, but he was not interrogated on this point.   If, however, there were evidence of a fraudulent intent on the part of Congdon, that would not avoid the conveyance, unless Arnold or the City Bank knew that the clause in the conveyance, which is objected to, was made for the purpose of defrauding or delaying creditors ; and of this there is no evidence.

I have thus stated briefly, but substantially, the views of the court, as to these conveyances alleged by the bill to be fraudulent and void.   These views, however, are not essential in the decision of the case, if the other ground of defence, on which the defendants' counsel relies, is well founded.   He contends that the question of fraud by the parties to these conveyances is immaterial, and does not affect the validity of the defence, the defendants being *bonâ fide* purchasers for a valuable consideration, and without notice of any fraud   The principle of

law on which the defendants' counsel relies is well established, and is not to be questioned, as appears by the case of the *Oriental Bank* v. *Haskins,* 3 Met. 338, 339, and the cases there referred to. The defence then is reduced to a question of fact, whether the defendants are *bonâ fide* purchasers, as alleged in their answer.

That the answer, being responsive to the bill, is evidence for the defendants, as to facts within their own knowledge, is not denied. And by a well established rule of equity, the answer must be taken to be true, unless contradicted by two witnesses, or by one witness with probable and corroborating circumstances. And it is certain that the defendants' answer is not thus contradicted and disproved. In their answer, made under oath, they say that all the several deeds and conveyances mentioned in the bill and the supplemental bill, so far as they have any knowledge of the same, were made upon good considerations and in good faith, and with no intent or design to hinder, delay, or defraud the then or future creditors of the Cove Mill Company, or any other persons. And they severally deny any confederation with any person or persons to do or effect any fraud or injustice, or that they have any knowledge of such confederation by others. And Tanner says that the deeds which he has taken state the true considerations therefor.

The plaintiff's counsel objects to the answer as being too general, and for omitting to state, specifically, sundry facts which the defendants were called upon to answer. But this objection comes too late. The plaintiff should have excepted to the answer, and the defendants might have been compelled to answer more fully.

The answer, however, does state all that seems material to the decision of the cause. It states the consideration of the conveyances to Tanner, and the statement is confirmed by other testimony. It avers also that these purchases were made in good faith, and fully denies the knowledge of any fraudulent transaction by any other person or persons. There is no sufficient evidence to disprove these averments and denials, and they must be considered as true.

It is also objected that Arnold was not a purchaser, except of the right to sell the estate at public auction for the purpose of paying certain debts. But there is no ground for this objection. Arnold was a purchaser of all Congdon's title and interest in the estate, in trust, in the nature of a mortgage with a power of sale ; for after the payment or discharge of the debts secured thereby, the estate was to be conveyed to Waterman for the use of Congdon. Nor is it any valid objection, that the deed to Tanner was taken after the deed to the plaintiff; for the title purchased by Tanner was the elder title. We must therefore consider Tanner as a *bonâ fide* purchaser, as alleged in the answer, and that he has a valid title under the mortgages alleged by the bill to be fraudulent. We are strongly inclined to the opinion, as before remarked, that no fraud has been satisfactorily proved ; but if otherwise, it cannot invalidate the defendants' title.

The only remaining question is, whether the plaintiff is entitled to redeem by paying what is due on the mortgages previous to his; and we are of opinion that he is so entitled. In strictness, the plaintiff ought in his bill to offer to pay the sums due, if these mortgages should be held valid ; according to the Rev. Sts. *c.* 107, § 18. But no objection has been made to the bill for this defect, and the plaintiff may now have leave to amend the bill in this respect.

It is very clear that the defendants' title under the mortgages made prior to the plaintiff's mortgage, and their title to the equity under Congdon by a conveyance from him subsequent to the plaintiff's mortgage, cannot merge so as to defeat the plaintiff's title. The defendants may, by filing a cross bill, redeem the plaintiff's mortgage ; but, unless they move for liberty so to do, the case must be referred to a master, to take an account, ascertaining the amount due on the mortgages under which the defendants claim, including the deed of trust to Arnold, which we consider as a mortgage with power of sale not executed ; and so it has been argued by the defendants' counsel. In terms, the conveyance was to be made to Waterman, on the discharge of the debts secured ; but it was to be so conveyed

for the use of Congdon, which is equivalent to a reconveyance to him. Unless, therefore, the defendants should move for liberty to file a cross bill, the case will be referred to a master to take an account of the sums due on the defendants' mortgages made prior to the plaintiff's mortgage. Whether the plaintiff is entitled to an account of the rents, depends on the question whether the defendants, or those under whom they claim, were in possession under the prior mortgages.